(110 App. Div. 113)

BROWN et al. v. BROWN et al.

(Supreme Court, Appellate Division, Second Department.   December 29, 1905.)

1. QUIETING TITLE—STATUTORY REMEDIES—BURDEN OF PROOF.
    In an action brought under Code Civ. Proc. §§ 1638–1650, inclusive, to compel the determination of claims to real property, the burden of establishing by a fair preponderance of the evidence that the defendants' claim to the premises was unjust was on plaintiffs.
    [Ed. Note.—For cases in point, see vol. 41, Cent. Dig. Quieting Title, § 89.]

2. WITNESSES—CROSS-EXAMINATION—TESTIMONY IN PRIOR PROCEEDING.
    In an action to compel the determination of claims to real property, one of plaintiffs testified on direct examination to the advancement of large sums of money for taxes and improvements on the property, and that he had made such payments at the request of and for the alleged owner through whom plaintiffs claimed title. This evidence was given to establish the ownership and possession of such person. On cross-examination defendants sought to show by evidence given by the witness in prior proceedings that the money so advanced and paid was in fact loaned to an uncle of the witness, who had repaid the same. The witness, after testifying that the money was not paid to him by his uncle by an assignment of an interest in other property, and denying that his uncle had as-

signed to witness an interest in such property, was asked what he meant by his former testimony referring to the consideration mentioned in the assignment by his uncle of the uncle's interest in said property, which was for money loaned at different times for groceries and for taxes upon the farm on which the parties lived. *Held*, that the evidence sought by this question was competent, and its exclusion was error.

[Ed. Note.—For cases in point, see vol. 50, Cent. Dig. Witnesses, §§ 931–954, 967–969. 971.]

3. SAME.

After a witness had testified in explanation of his possession of certain money advanced by him that it was the avails of a ranch sold by him. which he stated was in the neighborhood of $250, it was proper on cross-examination to direct his attention to his evidence in a prior proceeding for the purpose of ascertaining the amount which the witness received for the ranch.

[Ed. Note.—For cases in point, see vol. 50, Cent. Dig. Witnesses, §§ 931–948.]

4. TRIAL—MOTION TO STRIKE OUT EVIDENCE—NECESSITY OF PREVIOUS OBJECTION.

Where a question did not call for a conversation with any one, and gave no notice by its form that it was sought to prove by the witness a conversation with a third person, it did not require any objection to preserve defendant's right to have the testimony stricken out as hearsay. incompetent, and irresponsive.

[Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trial, §§ 238, 242.]

Appeal from Trial Term, Westchester County.

Action by Aimee Brown and others, as executrices of Edward W. Brown, deceased, against Elizabeth L. Brown and others. From a judgment for plaintiffs, defendants appeal. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, RICH, and MILLER, JJ.

Frederick Wm. Sherman (J. Mayhew Wainwright, on the brief), for appellants.

Joseph W. Middlebrook, for respondents.

RICH, J. This is an appeal from a judgment in favor of the plaintiffs and against the defendants, in an action brought under sections 1638 to 1650, inclusive, of the Code of Civil Procedure, to compel the determination of claims to real property. The plaintiffs allege, among other things, that "for more than 20 consecutive years prior to and immediately preceding the 21st day of February, in the year 1899, one Hannah A. Brown was seised and possessed in fee simple absolute of" a certain piece or parcel of land of about 50 acres, situated in the village of Portchester, county of Westchester; "that during all said time the said Hannah A. Brown was in the actual and undisputed possession of said lands and premises, claiming to own and possess said lands and premises in fee simple absolute. and adversely to all other persons; that on said 21st day of February, 1899, said Hannah A. Brown did make, execute, acknowledge, and deliver to the plaintiffs a certain deed in writing and under seal. whereby she conveyed, granted, and released unto the plaintiffs the aforesaid described premises; * * * that immediately upon the execution, acknowledgment, and delivery of said deed to the plaintiffs, on said 21st day of February, 1899, the plaintiffs entered into

possession of the said lands and premises, and ever since said 21st day of February, 1899, have been 'and continued in possession thereof, and now are 'in possession thereof as owners thereof, in fee simple absolute, under and by virtue of the said deed; that the plaintiffs have an estate in said lands and premises in fee simple absolute under and by virtue of the said deed; that the plaintiffs and the said Hannah A. Brown, whose estate the plaintiffs now have, and from whom they derive their title as aforesaid, have been for more than one year last past in the actual possession of said lands and premises as sole tenants thereof, claiming the same in fee; that the above-named defendants unjustly claim an estate or interest in fee in and to the said lands and premises, and molest and interfere with the quiet enjoyment and possession of the same by the plaintiffs."

It appears that Nehemiah Brown, the grandfather of plaintiff and defendants, died on the 4th day of December, 1847, seised and possessed of the lands and premises described in the complaint, leaving a last will and testament bearing date September 6, 1847, which was duly admitted to probate by the surrogate of Westchester county on the 20th day of December, 1847. Letters testamentary were issued to the executors named therein, in and by which he directed that said premises should remain unsold during the life of his wife, Ann—

"And that she shall have a good and sufficient maintenance on the said farm during her life, such maintenance to be in lieu of dower. At the death of my said wife Ann, I order the said homestead or farm [the premises described in plaintiff's complaint] to be sold at the discretion of my executors—reserving a place for a burial spot for my family and the descendants of my father of eighty feet in an easterly and westerly direction and sixty feet northerly and southerly where the bodies of my father and mother are laid—of the moneys arising from the sale of said homestead or farm and from sale of the last mentioned personal estate I order and direct the following dispositions to be made. I order five hundred dollars to be paid to my son Samuel S. Brown. I order one hundred dollars to be paid to my son Nehemiah Brown. I order five dollars to be paid to my son Merritt Brown. I order five dollars to be paid to my son Daniel H. Brown. I order my executors to retain and put at use for the benefit of my son Lawrence Brown one hundred dollars. All the rest, residue and remainder of said moneys arising from the sale of my farm and personal estate aforesaid I order to be divided into nine equal shares. I give to my daughter Phebe M. Brown two of said shares; I give to my daughter Charity Brown two of said shares; I give to my sons Moses C. Brown and Nehemiah Brown one of said shares each; I give to my daughters Hannah A. Brown and Amy Brown one of said shares each; the remaining share shall be retained by my executors and put at use for the benefit of my son Lawrence Brown and should the interest of said sums so given for the benefit of my said son Lawrence Brown not be sufficient for his maintenance my said executors are authorized to use such part of the principal as shall supply the deficiency and in case any part of the said sum so given for the use of said Lawrence Brown shall remain unexpended at his death the same shall be given to my son Nehemiah Brown."

The defendants denied the allegations of plaintiffs' complaint, and alleged:

"That the said executors never exercised the power of sale contained in said last will and testament, and never sold or conveyed the said homestead or farm or any part thereof, and that the said executors never filed or presented to any court any account of their proceedings as such executors, and have never paid to the parties, to whom the same are directed to be paid in said will, their respective shares of the proceeds of sale of the said homestead and farm, and have not divided such proceeds of sale as directed in the said

will.  *  *  *  and that each of the said Phebe M. Brown, Daniel H. Brown, Charity Brown, Nehemiah Brown, and Hannah A. Brown died seised and possessed of an undivided estate in fee simple in the lands and premises described in the complaint and entitled to share in the proceeds of the sale thereof."

The learned referee has decided that the executors exercised the power of sale and sold the said homestead farm to Hannah A. Brown, who paid the purchase money, lived upon the premises, and exercised "many" acts of ownership during her lifetime, although he is undecided as to whether the sale was consummated by the delivery of a deed. The plaintiffs are not now claiming a record title in Hannah A. Brown, but that she acquired title by prescription. It is claimed, however, that the inference ought to be drawn that the premises were conveyed to Hannah by the executors under the power of sale contained in the will. The burden of establishing by a fair preponderance of the evidence that the defendants' claim to the premises was unjust was upon the plaintiff. It is unnecessary, however, to determine upon this appeal whether the plaintiffs have established this, as the judgment must be reversed because of errors of the learned referee upon the trial in his rulings.

Edward. Brown, one of the plaintiffs, testified upon his direct examination to the advancement of large sums of money for taxes and improvements upon the property, and that he had made such payments at the request of and for Hannah Brown, his deceased sister, through whom the plaintiffs claimed title to the premises. This evidence was given to establish the ownership and possession of Hannah. On his cross-examination the defendants sought to show, by evidence given by the witness in prior proceedings, that the money so advanced and paid was in fact loaned to an uncle of the witness, Nehemiah Brown, who had repaid the same. The witness, after testifying:

"This money was not paid to me by Nehemiah Brown by assigning to me his interest in the Elizabeth Anderson estate. He didn't assign to me his interest in the estate. Nehemiah Brown never did. Never executed an assignment to me which is on record."

.—was asked:

"What do you mean in this testimony by the consideration mentioned in the assignment by Nehemiah Brown 'to me' of his interest in the estate of Elizabeth Anderson, which was for money loaned at different times for groceries, taxes upon the farm upon which we lived? What assignment was that?"

Counsel for the plaintiffs objected as immaterial, the objection was sustained, and defendants excepted. The witness had testified in explanation of his possession of the money advanced by him for the payment of taxes and repairs that he had the avails of a ranch in Montana, sold by him, which he placed in the neighborhood of $250. By proper questions, directing the attention of the witness to his former evidence, counsel for the defendants sought to ascertain the amount which the witness received for the ranch, and was informed by the referee that he would not allow him to go any further on that subject, to which ruling an exception was taken. The evidence sought by both of these questions was clearly competent, and its

exclusion was error. On his redirect examination the witness was asked, with reference to money paid him by Nehemiah:

"How did Nehemiah come to pay you that money?"

And answered:

"Hannah told me that there was some bank stock Uncle Nehemiah had which was taken as his portion of Mrs. Anderson's estate, and he would give that to me for part payment of what I had done on the farm, and he did so."

Counsel for the defendants, immediately on this answer being made, moved to strike it out as hearsay, contrary to section 829 of the Code, incompetent, and irresponsive, which motion was denied on the ground that no objection was made to the question. The question did not call for a conversation with any one; did. not give any notice by its form that it was sought to prove by the witness a conversation with Hannah, incompetent and inadmissible under the provisions of section 829; and did not require any objection to preserve defendants' right to have it stricken out upon the grounds stated in the motion of their counsel. This exception was well taken.

On several other occasions during the trial evidence clearly within the prohibition of section 829 was admitted over the objection of defendants, and the exceptions taken to such rulings were also well taken. Declarations of Moses Brown, deceased, made subsequent to the time he had parted with all his interest in the farm, that Hannah Brown had bought the farm, were received over defendants' objections. This evidence was incompetent and inadmissible under these and similar rulings, which are so numerous and apparent as to render their consideration seriatim, unprofitable, and unnecessary, incompetent evidence was admitted upon which it is plainly apparent that the referee relied in reaching his conclusions, and because of this, and without passing upon the facts, I think the judgment ought to be reversed.

Judgment reversed, and a new trial ordered before another referee, costs to abide the event. All concur.